UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| TANYA E. BECNEL,<br>    Plaintiff | CIVIL ACTION NO.: |
| v. | JUDGE: |
| BROADWAY SERVICES, INC.,<br>    Defendant | MAGISTRATE: |

**COMPLAINT AND JURY DEMAND**

Tanya E. Becnel ("Becnel" or "Plaintiff") files this Complaint and Jury Demand to obtain full and complete relief and to address the unlawful employment practices suffered by her as set forth herein.

## I.  INTRODUCTION

1. This action is brought against Broadway Services, Inc., ("BSI" or "Defendant") pursuant to the Age Discrimination in Employment Act, as amended, 29 U.S.C. § 621 *et seq*. ("ADEA") and the Americans with Disabilities Act of 1990, as amended, 42 U.S.C. §§12101 *et seq*. ("ADA").  Under the ADEA, it is unlawful for an employer to discriminate against an individual because of such individual's age.  The ADA makes it unlawful to intentionally discriminate against a qualified employee on the basis of the person's disability, having a record of a disability, or being regarded as having a disability.  BSI operates *Lambeth House* located in uptown New Orleans, featuring independent living apartment homes, assisted living apartments, a variety of elegant spaces, nursing care and other amenities.  *See*, http://www.lambethhouse.com/retirement-communities-new-orleans-louisiana. As alleged below, Defendant discriminated against Plaintiff when it took adverse employment action against her in violation of the ADEA and/or the ADA.

## II. JURISDICTION

2. This Court has jurisdiction pursuant to 28 U.S.C. § 1331 because this action arises under the laws of the United States.

3. Plaintiff has received her right to sue notice from the Equal Employment Opportunity Commission and has exhausted the administrative prerequisites to filing suit.

## III. VENUE

4. This action may be brought in the United States District Court, Eastern District of Louisiana under 42 U.S.C. § 2000e-5(f)(3) and under 28 U.S.C. § 1391 because the unlawful employment actions alleged in this complaint were committed in Orleans Parish, Louisiana. Moreover, Plaintiff worked for Defendant and would have continued to work for Defendant in this judicial district but for the alleged unlawful employment practices.

## IV. PARTIES

5. Plaintiff is a person of the full age of majority and resides in Orleans Parish, Louisiana.   At the time of the allegations set forth in this complaint, she was 69 years old.  Plaintiff is in the protected age group (at least 40 years of age) as defined in the ADEA, 29 U.S.C. § 631.

6. The defendant, BSI, is a non-profit corporation, maintaining a principal place of business in Orleans Parish in the Eastern District of Louisiana.  It is an employer within the meaning of 29 U.S.C. § 630(b) and 42 U.S.C. § 12111(5)(A). At all relevant times, BSI has continuously employed over 20 employees.

## V.  STATEMENTS OF FACTS

7. Becnel began her employment at BSI on July 6, 1993 and worked there for approximately 23 years. Her last position with BSI was as a Marketing Director.

8. BSI regarded Becnel as having a disability, namely dementia, and subjected her to adverse action on account of this perceived disability. Dementia is a brain disorder associated with the elderly that substantially limits the major life activity of thinking and cognition. Plaintiff does not have dementia.

9. BSI further subjected Becnel to adverse action because it considered her too old for her job as evidenced by the repeated statements of Becnel's supervisor, BSI Chief Operating Officer Jere Hales ("Hales" or "COO Hales"), that Becnel had the age-related disability of dementia and must be fired.

10. During 2015 and 2016, Becnel's supervisor, COO Hales, began accusing her during marketing and one-on-one meetings of not remembering things.

11. On or about November 2015, COO Hales told BSI's Director of Human Resources, Randy J. Dukes ("Dukes" or "HR Director Dukes") that Becnel was "demented" and had to go. When Dukes asked Hales why she believed Plaintiff had dementia, Hales said it was obvious.

12. Dukes told Hales that terminating Plaintiff's employment because Hales thought that Plaintiff had dementia could constitute disability discrimination.

13. On or around March or April 2016, COO Hales once again approached HR Director Dukes and told him that Becnel had dementia and that, as a result, Hales wanted to fire Becnel.

14. Dukes reminded Hales of their previous conversation concerning how terminating Plaintiff's employment because Hales thought that Plaintiff had dementia could constitute disability discrimination.

15. In response, Hales told Dukes that both she and BSI's Chief Executive Officer Scott Crabtree ("Crabtree" or "CEO Crabtree") were done with Plaintiff, that Plaintiff would soon be fired, and that this issue would be dealt with at an upcoming manager's retreat.

16. A few weeks after this conversation, BSI held its manager's retreat. As part of a human resources presentation at the retreat, an example was presented of an employee who had been employed with a company for over 20 years and was perceived by her employer as having dementia. This "fact pattern" was read in front of the group of attending employees. Becnel complained about this to a co-worker in attendance.

17. After hearing the presentation, a humiliated Becnel asked COO Hales if the fact pattern presented was a reference to Becnel. Hales denied it.

18. On or around April or May 2016, COO Hales once again approached HR Director Dukes and told him that she, CEO Crabtree, and BSI's Chief Financial Officer Lynn Swetland ("Swetland" or "CFO Swetland") had decided to terminate Plaintiff for violating a marketing procedure.

19. Because Plaintiff had advised Dukes that she was debating whether she would retire at the end of 2016, Dukes suggested to Hales that Plaintiff simply be allowed to retire at the end of the year. In response, Hales insisted that Plaintiff had to be terminated immediately.

4

20. Dukes then suggested to Hales that Plaintiff be offered the opportunity to retire in lieu of termination. CEO Crabtree and COO Hales agreed to this suggestion.

21. On or around May 25, 2016, CEO Crabtree learned that the residents of Lambeth House were collecting contributions to present to Plaintiff as a retirement gift. Plaintiff was not aware of the residents' plan to present her with a gift.

22. Rather than simply meeting with the residents and explaining that soliciting such contributions was prohibited at Lambeth House, Crabtree pressured Plaintiff on May 26, 2016 to sign a pre-prepared letter concerning the residents' collection efforts or be terminated immediately, escorted out of the building, and never permitted to return to Lambeth House. CFO Swetland and HR Director Dukes were present during this confrontation.

23. After reading the letter Crabtree had prepared for Becnel to sign, Becnel conveyed to Crabtree that she was being bullied into signing a document she did not write. CFO Swetland then yelled at Becnel, "Just sign the letter."

24. Because of the pressure exerted by Crabtree and Swetland, Plaintiff signed the letter. Later that day, as a further humiliation, she was required to verbally address the residents at a Town Hall meeting concerning their efforts at collecting a retirement gift for her.

25. To avoid being formally terminated, Plaintiff was forced to retire on June 1, 2016.

## VI.  STATEMENT OF CLAIMS

### FIRST CLAIM FOR RELIEF - DISABILITY DISCRIMINATION IN VIOLATION OF THE ADA

26. Plaintiff restates, re-alleges, and re-avers and hereby incorporates by reference any and all allegations of paragraphs 1-25, inclusive herein.

27. BSI violated the ADA by taking adverse employment action against Plaintiff, who could and did perform all the essential functions of the Marketing Director position and who had no physical or mental limitations affecting her ability to work, on the basis of a perceived disability in violation of 42 U.S.C. §12112(a).

28. The effect of the practices complained of in paragraphs 1 through 27 above has been to deprive Plaintiff of equal employment opportunities and otherwise to adversely affect her status as an employee because of a perceived disability.

29. The unlawful employment practices complained of in paragraphs 1 through 28 were intentionally done with malice and/or reckless indifference to the federally protected rights of Plaintiff. Crabtree knew or should have known the actions taken against Plaintiff were unlawful. Crabtree purportedly has managed New Orleans retirement communities for years, and he currently serves on the board of the Louisiana Board of Examiners for Nursing Home Administrators "as well as numerous associations related to community services for aging and disabilities." *See*, http://www.lambethhouse.com/leadership.

### SECOND CLAIM FOR RELIEF - AGE DISCRIMINATION IN VIOLATION OF THE ADEA

30. Plaintiff restates, re-alleges, and re-avers and hereby incorporates by reference any and all allegations of paragraphs 1-29, inclusive herein.

6

31. BSI violated the ADEA by taking adverse employment action against Plaintiff, who was in the ADEA's protected age group, when it forced Plaintiff to retire because Plaintiff was considered to have an age-related disability and, thus, to be too old for her job.

32. The effect of the practices complained of in paragraphs 1-31 above has been to deprive Plaintiff of equal employment opportunities and otherwise adversely affect her status as an employee because of her age.

33. The unlawful employment practices complained of in paragraphs 1 through 32 were intentional and were willful within the meaning of 29 U.S.C. § 626(b).

## VII.  EXHAUSTION OF ADMINISTRATIVE REMEDIES

34. On November 1, 2017, the U.S. Equal Employment Opportunity Commission issued a notice of right to sue with respect to Plaintiff's charge of discrimination. All administrative prerequisites have been satisfied. The suit is filed within the time period permitted by law.

## VIII.  JURY DEMAND

35. Plaintiff herein demands a trial by jury of all issues in this action that may be tried by jury.

## IX.  PRAYER FOR RELIEF

Plaintiff respectfully prays for judgment against Defendant as follows:

a. Declare that the acts and practices of Defendant are in violation of federal law;

b. Enjoin and permanently restrain Defendant from engaging in such unlawful activity;

c. Award Plaintiff all earnings she did not receive because of the actions of

Defendant, including but not limited to back pay, front pay, bonuses, pension, and any other lost benefits;

d. Award Plaintiff compensatory damages for pain and suffering, emotional distress, mental anguish, loss of reputation, embarrassment, and humiliation, as well as any out-of-pocket expenses;

e. Award Plaintiff punitive damages and liquidated damages;

f. Award Plaintiff costs, expert witness fees, attorneys fees and pre- and post-judgment interest;

g. Grant Plaintiff any such other and further relief as this Court may deem just and proper.

Respectfully submitted,

*/s/ Robert B. Landry III*
Robert B. Landry III  (#18998)
rlandry@landryfirm.com
**ROBERT B. LANDRY III, PLC**
5420 Corporate Boulevard, Suite 204
Baton Rouge, Louisiana  70808
Telephone:     (225) 349-7460
Facsimile:     (225) 349-7466

**COUNSEL FOR PLAINTIFF,
TANYA E. BECNEL**